## ISABELLA THOMAS *vs.* THE FIDELITY & CASU-ALTY COMPANY OF NEW YORK.

*Accident Insurance—Death Resulting Partly From Disease and Partly From Accident—Evidence.*

An accident insurance policy provided for the payment of a sum of money in the event of the death of the insured, "resulting directly and independently of all other causes from bodily injuries sustained through external, violent and accidental means." The insured, a man sixty-four years old, fell upon an ice-covered pavement, broke the small outer bone of one of his ankles, and died in about six weeks. Prior to his death, the injury to his ankle had entirely healed. The medical evidence was to the effect that the insured, at the time of the accident, was suffering from *arterio-sclerosis*; that if his arteries had been in good condition, the injury to his ankle would have been trifling, but it was a contributing factor on account of his diseased state, and precipitated the conditions which resulted in death. *Held,* that the death of the insured did not result directly, and independently of all other causes, from the accident, and that there can be no recovery on the policy.

The rule that a hypothetical question to an expert witness must be based upon facts proved in the case, does not apply to such a question asked on cross-examination.

When there is no evidence in the case as to what facts were shown by an autopsy, an expert witness cannot be asked on direct or re-direct examination, an hypothetical question based upon facts assumed to have been discovered by an autopsy.

*Decided June 26th, 1907.*

Appeal from the Court of Common Pleas (HARLAN, C. J.

In the first exception the question asked was: Doctor, assuming that there was a post-mortem examination performed by a competent surgeon, and that it was found by the post-mortem examination that Colonel Thomas was affected with *arterio sclerosis;* would you be prepared, from any knowledge that you got from the clinical side of the case, to say he did not have *arterio sclerosis ?*

In the second exception the question was : So if the evidence showed Col. Thomas for many years had been a hard

drinker, and for many years suffered from rheumatism, those would be natural predisposing causes towards *arterio sclerosis?*

In the fourth exception the question was : If he had this *arterio sclerosis* in a more serious degree than most men of his age would'nt that be a plausible explanation of why he died when the majority of men under the same circumstances would not have died ?

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*J. N. Ulman* and *C. A. Tucker* (with whom were *Harman & Knapp* on the brief ), for the appellant.

It will be found that the text writers thus far have practically ignored the meaning of the words "resulting directly and independently of all other causes from bodily injuries sustained through external, violent and accidental means" in so far as those words might be held to limit the liability of an accident insurance company, and make that liability less than that of a tort feasor.  That is to say, the text writers have most of them tacitly assumed that the words "independently of all other causes" attempt to do so much that they do nothing, and standing by themselves are mere surplusage ; so that if the policy contains no other limitation of the assurer's liability than that expressed in those words, then just as a tort feasor is responsible for the direct. natural and probable consequences of his act, regardless of the previous physical condition of the plaintiff, just so is an insurer under such a policy liable for the direct, natural and probable consequences of an accidental injury entirely regardless of the previous physical condition of the plaintiff, and the plaintiff needs only to show that the injuries causing the disability or death were caused by external, violent and accidental means.   But when the text writers do consider the phrase "independently of all other causes," they write something like the following: "The provision that the injury insured against must be effected by the specified means 'independently of all other causes' is so un-

reasonable, indefinite and repugnant to the main purpose of the contract that the Courts construe it very strictly against the insurers, and sometimes really seem to disregard it altogether." *Richards on Insurance*, p. 215.

When the policy contains a negative stipulation, of which a typical form is "benefits under this certificate shall not extend to any death or disability which may be caused wholly or in part by bodily infirmities or disease," with special reference to that particular form of policy the following principles will be found to be enunciated :

1. If the insured was perfectly healthy when accidentally injured, and the accident set up a chain of causes in which a disease in one form or another entered, then the exception in the policy has no force, and the insurer is liable, even though a previous injury or a previons attack of disease had rendered the insured abnormally liable to a recurrence of the disease or abnormally sensitive to the effects of an accidental injury.

2. If there was a pre-existing disease at the time of the accidental injury, even though unknown to the injured, and if that disease aggravated the effects of the accident, or the accident aggravated or hastened the progress of the disease, then the exception comes into play, and the insurer is not liable. *McGluckey* v. *Fidelity and Casualty Co.*, 80 Me. 251; *Accident Insurance Co.* v. *Crandall*, 120 U. S. 527; *Young* v. *Accident Insurance Co.*, Mont. L. Rep., 6 Super. Ct. 3; *Isitt* v. *Ry. Pass. Assn. Co.*, L. R. 22, Q. B. 504; *Travelers' Insurance Co.* v. *Melick*, 65 Fed. Rep. 178; *Peck* v. *Equitable Accident Assn.*, 5 N. Y. Supp. 215; *Winspear* v. *The Accident Ins. Co. Lim.*, L. R. 6 Q. B. Div. 42; *Fidelity and Casualty Co.* v. *Johnson*, 30 L. R. A. 206.

In the policy sued on in the present case, there is no such negative stipulation or exception. The policy provides that the company shall pay for injuries produced by accidental means and independently of all other causes. That is all that the policy says in that regard.

In the cases relied on by the defendant below (*a*) The policy contained a negative stipulation or exception of disease;

and (*b*) the Court in its opinion referred specifically to such negative stipulation or exception of disease as ground of its decision. And in the policy sued on in this case there is no such negative stipulation or exception of disease whatsoever!

In *Fetter* v. *Fidelity & Casualty Co.*, 174 Mo. 256, it appeared that the insured, a man of 69 years of age, in trying to push up a window which had stuck, fell on his right side against the edge of a table. This fall injured or ruptured his right kidney; and after about thirty days of hemorrhage he died. The autopsy showed that the lower end of his right kidney was in a cancerous condition, and that the rupture was between the normal and cancerous parts, or into the healthy tissue. All the testimony was that the accident caused the rupture, the rupture caused the hemorrhage, and the hemorrhage caused the death. The majority of the expert witnesses were of the opinion that the cancerous condition of the kidney existed at the time of the accident, and that that condition was the predisposing cause of the rupture, that is, that that condition rendered rupture more liable to occur under the force of the blow than if the kidney had been sound. But some of the expert testimony was to the effect that the cancerous condition itself might have been produced by the blow.

Under these facts the trial Court granted an instruction offered by the plaintiff that they might find for the plaintiff, "notwithstanding the jury further believes from the evidence that the said kidney, at the time of the rupture, was diseased, provided that the jury further find that said Fetter would not have died at the time under the circumstances and in the manner he did die had it not been for the accidental rupture of his kidney." This and other instructions were supplemented by the modified instruction for the defendant that the plaintiff could not recover unless "the accident was the sole and only direct cause of death."

The instructions were approved by the Court. Commenting on the defendant's contention that the words "independent of all other causes" should be given a qualifying meaning so that upon the evidence outlined the case should have been taken

from the jury, the Court said, "If we should give to those qualifying words of the policy the meaning that is now claimed by the defendant they were intended to have, there would be scarcely any limit to their nullifying influence  *  *  *.  If, therefore, there could be discovered in a man's body, after his death, any condition before undiscovered and unsuspected, that under scientific tests would render him more amenable to accidents or less capable of resisting their influence, the policy would not cover the case.  The fact that a man is sixty-nine years old, yet with an activity of body ordinarily found only in one much younger, might have something to do both with the fact of an accident and its result, and thus his age and unusual activity, could be said to be a predisposing cause—remote, perhaps, as the learned witness designated the cancer in this case—still, in such case, in that sense, the accident could not be said to have been the cause of the death 'independent of all other causes.'  The causes referred to in the policy are the proximate or direct, not the remote causes."

This opinion was rendered upon consideration of a policy which like the one in the case at bar contained no negative stipulation or exception of disease.  See also *Patterson* v. *Ocean Accident Co.*, Court of Appeals, D. C. 33 Wash. L. R. 274.

In *Modern Woodman, etc., Assn.* v. *Shryock*, 54 Neb. 250, the Court was of the opinion that pre-existing disease is an immaterial circumstance, and that the sole question is whether the accident was the proximate and direct cause of death. That this is what the Court means to hold is rendered certain by the fact that it approved a verdict for the plaintiff, although the jury, in answer to special interrogatories submitted to it, found that prior to and at the time of his death, Wm. B. Shryock had fatty degeneration of the heart, and that the cause of his death was violent bodily injury, he at the time having fatty degeneration of the heart.  See also *Freeman* v. *Mercantile, etc., Assn.*, 156 Mass. 351.

In *Driscol* v. *U. S. Health, etc., Co.*, 93 S. W. (Mo.) 880, the Court said: "In view of what may be developed upon trial, we deem it important at this time to state our construc-

tion of the words in the policy "if death should result solely
from such injuries within three months.' The important
question that may arise under certain possible phases of proof
is this: 'What is meant by the term if death should result
solely from such injuries?' We think the only reasonable in-
terpretation to be placed upon this clause is to say that the
injury must stand out as the predominant factor in the produc-
tion of the result, and not that it must have been so virulent
in character as necessarily and inevitably to have produced
that result, regardless of all other conditions and circum-
stances. People differ so widely in health, vitality and ability
to resist disease and injury that what may mean death to one
man would be comparatively harmless to another, and there-
fore the fact that a given injury may not be generally lethal
does not prevent it from becoming so under certain conditions,
and if under the peculiar temperament or condition of health
of an individual upon whom it is inflicted such injury appears
as the active efficient cause that sets in motion agencies that
result in death, without intervention of any other independent
force then it should be regarded as the sole and proximate
cause of death. The fact that the physical infirmity of the
victim may be a necessary condition to the result does not
deprive the injury of its distinction as the sole producing cause.
In such case, disease and low vitality do not rise to the dig-
nity of concurring causes, but in having deprived nature of
her normal power of resistance to attack, appear rather as the
passive allies of the agencies set in motion by the injury."
See also *Continental Casualty Co.* v. *Lloyd*, 165 Ind. 56, the
facts of which case are strikingly similar to the facts of the
case at bar.

In *Fidelity & Casualty Company* v. *Lowenstein*, 46 L. R. A.
450, also reported in 97 Fed. Rep. 17, the policy provided
that the insurer should not be liable "for injuries, fatal or oth-
erwise, resulting from poison or anything accidentally or oth-
erwise taken, administered, absorbed or inhaled."

The facts of the case were that the insured retired to his
room in a hotel, being then in a healthy physical and mental

condition; that while asleep he died from asphyxia or suffoca-
tion, the result of unconsciously, involuntarily and accidentally
inhaling gas into his lungs while asleep.    The Court cites a
number of cases, among them *Fidelity and Casualty Co.* v.
*Waterman*, 161 Ill. 632, all to the effect that such language
in a policy does not relieve the insurer from liability if the act
of the deceased in inhaling gas was neither conscious nor vol-
untary, but, on the contrary, was found to have been uncon-
scious, involuntary and accidental.

Even should the Court be of the opinion that the distinc-
tion which we have sought to maintain between those cases
which arose on policies which contained a negative stipulation
or exception of disease on the one hand, and the case at bar,
and those which arose out of similar policies to that here sued
on, on the other hand, we submit that the evidence in this
case does not show so conclusively that prior to the accident
on the 17th day of December, 1904, Colonel Thomas was suf-
fering from disease, in a legal sense of that word, as to justify
the Court in taking the case from the jury, even upon the
theory of the most extreme of the cases which have heretofore
been decided.

The testimony of Dr. Chambers means practically this:
That *arterio-sclerosis* is the scientitific name for that changed
condition of the arteries which is a necessary concomitant of
age; that Colonel Thomas was sixty-four year of age; and
that the structure of his arteries had changed with his age just
to the degree which an experienced physician would expect in
the average or normal case of a man that old.    That is not
disease.    It is health.    As well say that because there is a
disease known to science which causes the bones to become
brittle, or because there is a disease known to science which
causes the hair to fall out, or because there is or may be a dis-
ease known to science which causes the skin to become loose
and wrinkled, that every man of sixty-four who has a bald
head and a wrinkled face, and whose bones are not as strong
as they were when he was a boy, is a diseased man.    The
mere statement of such a proposition shows how ridiculous it

is.   It is a matter of common knowledge that the outward structures of the body change with age; and it would never occur to any one to suggest that because those usual outward and visible changes have taken place an old man is suffering from "diseases."   The ordinary man does not see the arteries, but to the trained eye of science they are clearly visible; and when the physician looks at a man sixty-four years old he knows at a glance that that man's arteries are old arteries, and that they are more or less worn out.   This worn-out condition he calls *arterio-sclerosis.*   Those facts are simply that the man's arteries, like every structure in him, (to quote Dr. Chambers), have changed with his years.   If that change, as in the case of Col. Thomas, has proceeded only to that extent which it is usual to find in a man of that age, then it can not possibly be called a disease.   To say otherwise is to say that there is no such thing as a healthy man sixty-four years of age, because every man of that age has the changed arteries and the changed structures that go with that age.

We say then, that the evidence shows that Col. Thomas did not have any disease prior to his injury.   But even if the Court should be of the opinion that the only rational conclusion to be drawn from Dr. Chambers' testimony is that this *arterio-sclerosis* as Col. Thomas had it, was a disease, (and we can conceive of no more irrational conclusion), nevertheless, under the authority of the cases already cited we apprehend that the case should have been allowed to go to the jury, and this whether the legal distinction sought to be maintained in the preceding point of this brief be regarded or not.

*Vernon Cook* and *Chas. Markell, Jr.,* (with whom was *Edgar H. Gans* on the brief) for the appellee.

Thomas, on the 17th of December, 1904, was suffering from a disease, *arterio-sclerosis.*   This disease consisted of a wearing out of the arteries through certain changes which ultimately result in death.   These changes, which were in progress on the 17th of December, continued until they resulted in a disease known as *encephalo meningitis,* which is some-

times one of the last stages of *arterio-sclerosis*. This disease, *encephalo meningitis*, directly caused death on the 31st of January, 1905. The accident of December 17th did not and could not have caused either *arterio-sclerosis* or *encephalo meningitis*, and it could not have been dangerous unless the disease, *arterio-sclerosis*, had existed at the time of the accident. The only injury caused by the accident was a fracture of the fibula, and this fracture had completely healed before Thomas' death. The only possible effect of the accident in connection with the death of Thomas was to accelerate and precipitate the changes which were already in progress through the existing disease, *arterio-sclerosis*. It thus appears that *arterio-sclerosis* existed before the accident, and continued to progress after the accident until it directly caused death.

If there were no authorities at all on analogous cases the unambiguous language of the policy must prevent a recovery. If it be conceded that the accident did hasten Thomas' death, and that his death would not have occurred at the time it did had it not been for the accident (which Dr. Chambers declines to say positively), yet it appears that *arterio-sclerosis* was at least an efficient, directly contributing cause of his death. On this state of facts, how can it be said that Colonel Thomas' death was caused by accident independently of all other causes? We submit that not one case has been decided in support of such a proposition. On the contrary, a long line of authorities, some of which are in conflict on other points and details, sustain the judgment of the lower Court in this case.

In *Nat. Masonic Acc. Assn.* v. *Shryock*, 73 Fed. 774, the Court said: "The burden of proof was upon the defendant in error to establish the facts that William B. Shryock sustained an accident and that that accident was the sole case of his death, independently of all other causes. If Shryock suffered such an accident, and his death was caused by that alone, the association agreed by this certificate to pay the promised indemnity. But if he was affected with a disease or bodily infirmity which caused his death, the association was not liable under this certificate, whether he also suffered an accident or

not.  If he sustained an accident, but at the time it occurred
he was suffering from a pre-existing disease or bodily infirmity,
and if the accident would not have caused his death if he had
not been affected with the.disease or infirmity, but he died be-
cause the accident aggravated the effects of the disease, or the
disease aggravated the effect of the accident, the express con-
tract was that the association should not be liable for the
amount of this insurance.   The death in such a case would
not be the result of the accident alone, but it would be caused
partly by the disease and partly by the accident, and the con-
tract exempted the association from liability therefor."

The principles thus laid down are also supported by the fol-
lowing authorities: *McCarthy* v. *Travellers Ins. Co.*, 8 Bissell,
362; *Travellers Ins. Co.* v. *Selden*, 78 Fed. 285; *Commercial
Travelers Mutual Accident Assn.* v. *Fulton*, 79 Fed. 423; *Life
Ins. Co.* v. *Dorney*, 66 Ohio St. 151, 155, 159; *Binder* v. *Na-
tional Masonic Accident Assn.* (Iowa), 102 N. W. 190; *Hub-
bard* v. *Mutual Acc. Assn.* 98 Fed. 930; •*Barry* v. *Acc. Assn.*,
23 Fed. 712; affirmed in 131 U. S. 100.

In the cases which we have cited thus far there were ex-
press provisions in the policies that the insurance should not
cover death caused "directly or indirectly, wholly or in part,
by disease."   For this reason the appellant seeks to distin-
guish these cases from the case at bar.   Without any apparent
attempt to point out precisely how any such distinction could
affect the present ease, it was very vigorously contended for
the plaintiff that the Courts had made a distinction, and that,
therefore, these cases are not authorities in the present case.

Obviously, the only possible distinction between a policy
insuring against death from accident "independent of all other
causes," and a policy such as those in the cases cited, is in
the use of the words "directly or indirectly."   It will hardly
be seriously urged that "all other causes" does not include
"disease."   On the contrary, it is a more comprehensive ex-
pression than a clause expressly excepting death from disease.
*Hubbard* v. *Travellers Ins. Co.*, 98 Fed. 932.

There is some conflict of authority as to the effect of a

clause excepting death caused "directly or indirectly by disease." Some Courts hold that without such provision, the expression "independent of all other causes," means only "all other *proximate* causes," and consequently that the insurer is liable, even though disease was a *remote* or *predisposing* cause which *indirectly contributed* to cause death. Such conflict of authority is, however, immaterial in the present case, since even the cases just mentioned show that there can be no liability on the present state of facts. The majority of cases, indeed, make no distinction between the expression "independent of all other causes," and an express exception of death caused by "disease, directly or indirectly." Thus, the opinion in *National Masonic Acc. Assn.* v. *Shryock*, already quoted, cites in support of the conclusions *Freeman* v. *Assn.*, 156 Mass. 351, a case which is relied on by the appellant in the present case.

A clear statement of the meaning of the expression "independent of all other causes" will be found in the case of *Maryland Casualty Co.* v. *Glass*, 67 S. W. 1062. See also *Delany* v· *Modern Accident Club*, 121 Iowa, 528; 63 L. R. A. 603; *Binder* v. *Nat. Masonic Assn.*, 102 N. W. Rep. 194.

The very large number of cases in which, under a great variety of circumstances, recovery has been permitted on accident insurance policies, do not in any way impair the authority of the cases we have cited, or dispute the principles established by them—at least so far as they have any bearing on the case at bar. Such cases include two large and well-defined classes which are very obviously distinguishable from the present case. These are:

(1) Cases in which death results from disease, but the disease itself was caused by the accident. In such case, the disease is a mere link in the chain of causation between the accident and the death, and, so far as the accident is concerned, it must be considered a *result* and not itself a *cause*. Death in such case results directly and solely from the accident, independent of all other causes.

A great number of cases might be cited in support of this proposition. The case of *Freeman* v. *Mercantile Accident Assn.*,

is an example.   There the defendant contended "that it is not liable in case of a death from disease, even if the disease is caused by an accident."   The Court, however, ruled against that contention and held that if the deceased sustained an accidental fall at a time when he was not suffering from peritonitis, and the accidental fall caused peritonitis from which he died, then the insurer was liable.   This case was strongly relied on by the plaintiff in the lower Court.   The case of *Delaney* v. *Modern Accident Club*, already cited, is another example of the same principle.

Cases of this class give no support to the appellant's case, because here it is indisputable that the disease from which Colonel Thomas died could not have been caused by the fall.

(2) Cases where there was an existing disease which did not itself cause, or *directly contribute* to cause death, but which was a *predisposing* or *remote* cause of death by rendering the deceased either more liable to accident, or in case of accident, more liable to sustain fatal injuries directly as a result of the accident.

It is with respect to this class of cases that there is some conflict of authority.   Some of the cases which we have cited seem to make no distinction between this class of cases and cases where disease *contributes directly* to cause death, and in which, consequently, there can be no recovery.   Even those cases, however, which do make this distinction, and permit a recovery in this class of cases, are not applicable in the present case, or, rather, they themselves show that in the present case there can be no recovery.

Two of the cases very strongly relied on by the appellant are excellent illustrations of this class.   *Fetter* v. *Fidelity and Casualty Co.*, 174 Mo. 256; 61 L. R. A. 459; *Patterson* v. *Ocean Acc. Corp.*, 33 Wash. L. R. 274.   In both of these cases the existing disease or *predisposing cause* was not in any sense an *active* or *efficient* cause *directly contributing* to cause death.   It was simply a condition or *status* under which the accident might cause a result which, under other circumstances or surroundings, it would not have caused.

Life insurance policies, as is well known, are issued after medical examination, and for an annual premium, based upon the age and condition of the insured at the time the policy is issued, one policy covering the whole life of the insured. Accident insurance is issued without medical examination, for one year only, renewed, as in this case, from year to year without apparently any change in premium due to age. Realizing that death may result either (1) from accident, or (2) from disease, or (3) from accident or disease combined, it is expressly provided that the insurer shall not cover either of the two cases in which disease is a factor, but it shall extend only to death from accident, independent of all other cases. Under the rule in the Fetter case, the Patterson case and similar cases, this does not prevent a recovery for death *caused* solely by accident merely because the insured may have been suffering from disease *at the time* of the accident, or because his physical condition, age or existing disease may have contributed in some remote or fanciful way in bringing about his death. Colonel Thomas, by reason of sciatica and rheuma- tism, to which he was subject, was undoubtedly more liable to fall and receive the accident which he did than he would otherwise have been. This, however (aside from the question of warranty), would not have relieved the defendant of liability to Thomas, or his estate, for the disability caused directly and solely by his fall, viz: the broken ankle, which had healed before his death. The policy does, however, distinctly provide that the defendant shall not be liable for the results which were not caused by Thomas' accident, but by pre-existing disease, which, at most, was only hastened in its course by the shock incident to the fall.

BRISCOE, J., delivered the opinion of the Court.

This is a suit at law, brought by the appellant against the appellee, to recover on an accident insurance policy issued by the appellee company on the life of the appellant's husband as beneficiary under the policy.

The declaration contains the usual money counts and a

special count.    The special count avers that the defendant, by
its policy of insurance, dated the 18th day of November,
1904, did insure David W. Thomas for the period of one year
against death resulting directly and independently of all other
causes from bodily injuries sustained through external, vio-
lent, and accidental means, agreeing that if death should re-
sult within ninety days from the injuries, the defendant would
pay the beneficiary in the policy named, who is the plaintiff in
this action, if surviving, the sum of ten thousand dollars and
for that on or about the 14th day of December, 1904, David
W. Thomas was injured by an accident, which caused his
death on or about the 31st day of January, 1905.

The defense on the part of the company is that the death of
the insured did not result directly or independently of all other
causes from bodily injuries sustained through external, vio-
lent or accidental means, but on the contrary resulted from
diseases in no way caused by external, violent, or accidental
means.

The judgment was in favor of the defendant and the plain-
tiff has appealed.

At the trial of the case, the plaintiff reserved nine excep-
tions, eight of them being to the admissibility of evidence and
the ninth, to the granting of the defendant's second prayer.
This prayer was granted, at the conclusion of the plaintiff's
case, and is as follows: "The defendant prays the Court to in-
struct the jury that it appears from the uncontradicted evi-
dence that the death of the deceased did not result directly
and independently of all other causes, from bodily injuries
sustained through external, violent and accidental means and
therefore under the pleadings, their verdict must be for the
defendant."

The prayer being in the nature of a demurrer, it becomes
necessary for us to examine the evidence upon which it was
based.

The policy; which is conceded to be a Maryland contract,
is dated October 18th, 1904, and provides, that the Fidelity
and Casualty Company of New York (herein called the com-

pany), in consideration of the premium and of the statements in the schedule of warranties hereinafter contained, which statements the assured makes on the acceptance of this policy and warrants to be true, does hereby insure the person named and described in said schedule (and herein called the assured) for the period of one year from noon, standard time, of the day this contract is dated (1) against disability or death resulting directly and independently of all other causes, from bodily injuries sustained through external, violent, and accidental means (suicide, sane or insane, not included) and (2) against disability from illness, as hereinafter defined.

The undisputed facts are, that the insured, David W. Thomas, on the 17th of December, 1904, while walking upon W. Saratoga street, in the city of Baltimore, slipped and fell upon the pavement and injured his ankle.  There were snow and ice on the pavement at the place of the accident, and his fall is alleged to be due to this condition of the street.   He returned shortly after the fall to the Young Men's Republican Club, where he had left a number of friends to go to the Hotel Rennert, and complained of suffering considerable pain in his right leg.   Doctor Chambers subsequently diagnosed the injury as a fracture of the fibula, the small outer bone of the ankle.   He died on January 31st, 1905.   The insured was a man of sixty-four years of age, and at the time of his death the fracture of the ankle had completely healed.   Doctor Chambers, who treated him continuously from the date of the accident, December 17th, 1904, until his death, on January 31st, 1905, in the proofs of loss submitted to the appellee, gave as the cause of death, "The primary cause due to the injury and consequent shock, due to the fall.   Contributory— *encephalo meningitis.*   Immediate cause, lung congestion." He testified that *encephalo meningitis* was a disease, it is an old form or some form of change in the meninges that covers the brain, changes going on in the brain surface. It is an affection of the brain covering, it means a degeneration.   In answer to the following questions, he said:

Q.   Doctor, you don't mean to say all men of 64 have *encephalo meningitis?*

A. I don't mean all men under or over 64 that die, die from *encephalo meningitis.* That is one of the things you can die from and in my judgment, *that is one of things he did die from.*

Q. Isn't that the principal one?

A. That was the most aggravating factor. The final congestion of his lung was the immediate cause.

Q. Did you think the *encephalo meningitis* was the primary cause?

A. I think that was a contributing cause.

Q. When you filled out the certificate to the Health Department you gave *encephalo meningitis* as the cause of death?

A. Yes.

Q. That is a disease, is it not?

A. Yes.

The proof further shows that at the time of the accident the insured was suffering from a disease called *arterio-sclerosis,* which is a diseased condition of the arteries.

Doctor Chambers, testified, he had more or less marked *arterio sclerosis.* He also testified:

Q. Doctor, an injury to the ankle of the kind that Colonel Thomas had couldn't, of course, have produced *arterio sclerosis* in a man who didn't have it, could it?

A. Oh, no. It would only be a dangerous factor in a man suffering under those conditions.

Q. Then, Doctor, wouldn't you say, *arterio sclerosis* was one of the contributing causes that brought about his death?

A. I think if his arteries had been perfectly good, it would have been a trifling injury, but, as it was, it was a very strongly contributing factor to his death.

Q. Then are you still of the opinion, as expressed by you in the proofs of death, that the accident, was the primary cause of Col. Thomas' death?

A. What I meant to state by that is this: The probabilities are, all the probabilities are, that if he had not received this accident, he would not have succumbed to those conditions to which he did in so short a time; that it preciptated those changes and conditions, which frequently occur in a man having *arterio sclerosis;* all those conditions can be precipitated by an accident.

Now, upon the evidence disclosed by the record in this case, it cannot be held that the death of the insured was caused

by the injury, independently of all other causes. On the contrary, it appears from this uncontradicted evidence of Doctor Chambers, the physician who attended him from the date of the accident until his death, that the fracture of the ankle had entirely healed, and that it could not have caused the *arterio sclerosis* which existed at the date of the accident; that *encephalo meningitis* was one of the things "he died from" and the accident would have been a trifling injury, if his arteries had been in a healthy condition.

The language of the policy is clear and plain, and death must result "directly and independently of all other causes, from bodily injuries sustained through external, violent and accidental means."

In *Dulany* v. *Fidelity and Casualty Co.*, ante p. 17, we said, under the repeated decisions of this Court, the policy must like other contracts, be construed according to the sense and meaning of the language in which the parties have seen fit to express themselves and they must abide by that language even though its selection turn out to have been unwise or unfortunate. A party seeking to secure insurance against a certain contingency must pay due regard to the contents of the policy offered him, and select one which plainly provides for the risk which he seeks to cover.

While the expression, "independently of all other causes," used in the policy, in the case at bar, has not been construed in any of the decisions of this Court, the weight of authority in other jurisdictions is decidedly against the construction urged by the appellant here.

In *National Masonic Accident Association* v. *Shryock*, 73 Fed. R. 774, the Court said: "If the appellee suffered such an accident (a fall on the street) and his death was caused by that alone, the association agreed by the certificate to the promised indemnity. But if he was affected with a disease or bodily infirmity which caused his death, the association was not liable under this certificate, whether he also suffered an accident or not. If he sustained an accident, but at the time it occurred he was suffering from a pre-existing disease or

bodily infirmity and if the accident would not have caused his death if he had not been affected with the disease or infirmity, but he died because the accident aggravated the effects of the disease, or the disease aggravated the effect of the accident, the death in such a case would not be the result of the accident alone, but it would be caused partly by the disease and partly by the accident and the contract exempted the association from liability therefor."

In the case of *Maryland Casualty Co.* v. *Glass*, 67 S. W. Rep. 1062, where the policy contained the expression "independent of all other causes," the Court said: "The burden of establishing the fact that the death of M. E. Glass resulted, independent of all other causes, from chloroform administered to him, is on the plaintiff. In other words, she must prove that the anaesthetic was proximately the sole cause of his death. If his death was caused by it alone, the appellant, by the policy, is liable to the appellee in the principal sum therein specified. But if he was afflicted with the disease which caused or directly contributed to his death, the company would not be liable, though chloroform might have been a cause concurring with his affliction in producing death. If he was suffering from appendicitis, as is shown by the indisputable evidence, and if the anaestheic would not have caused his death had it not been for such affliction, but he died because the chloroform aggravated the effects of the disease, or appendicitis aggravated the effect of the drug, the company would not be liable under its contract. For in either event appendicitis and chloroform would be concurring and inseparable agents proximately contributing to his death, and it could not have been the result of an injury from anaesthetic, independent of all other causes." And to the like effect are the cases of *Barry* v. *Accident Association*, 131 U. S. 100; *Commercial Travellers Association* v. *Fulton*, 79 Fed. Rep. 423 and other cases there cited.

We have examined with some care the very able and carefully prepared brief submitted on the part of the appellant, and the cases relied upon and cited therein. They are clearly

distinguishable from the case now before us because they rest upon dissimilar facts.

In the case at bar, the injury which the insured sustained from the fall completely healed before his death, and according to the uncontradicted evidence of Doctor Chambers would have been a trifling injury, and could not have caused either *arterio sclerosis* or *encephalo meningitis,* which were the causes of his death.

On the state of facts disclosed by the record, we are of the opinion, that the Court below was entirely right in withdrawing this case from the jury, and in granting the defendant's second prayer, to the effect that the death of the insured did not result directly and independently of all other causes, from bodily injuries sustained through external, violent and accidental means.

We have examined the eight bills of exceptions relating to the rulings on the evidence and find no error therein.

The first, second, and fourth bills of exceptions relate to questions asked and answered by Doctor Chambers, on cross-examination. The rule that a hypothetical question to an expert witness must be based upon facts proved in the case, does not apply to cross-examination. Mr. Jones in his work on Evidence, says: Although we have seen that on direct examination the hypothetical questions must be based on facts, proved or which the evidence tends to prove no such limit is imposed upon the cross-examination. For the purpose of testing the accuracy or credibility of the expert, or the value of his opinions he may be interrogated as to pertinent hypothetical cases concerning which no evidence has been given.

The extent to which the examination may go in respect to such collateral matters rests in the sound discretion of the Court, and the exercise of such discretion will not be reviewed on appeal, unless abused. *Wigmore on Evidence*, sec. 684.

The second and fourth exceptions are practically the same as the first and the questions asked, were properly admissible on cross-examination.

The third exception relates to the refusal of the Court to

allow Doctor Chambers to answer a long hypothetical question on re-direct examination based upon assumed facts, of an autopsy on the body of the insured.

There was no evidence as to the facts disclosed at the autopsy and the question would have been clearly inadmissible upon examination in chief, and was improper on re-direct examination. *Safe Deposit Co.* v. *Berry,* 93 Md. 568; *Electric Light Co.* v. *Lusby,* 100 Md. 634.

The fifth, sixth, seventh, and eighth bills of exception, relate to the question of the alleged breach of warranty and in the view we have taken of the case, it is not necessary to consider them. The rulings of the Court, in refusing to allow the questions to be asked, embraced in these exceptions, could not have injured the plaintiff.

Finding no error in the rulings of the Court, the judgment for the reasons assigned, will be affirmed.

*Judgment affirmed, with costs.*