Everett M. GRAY and Geraldine Ann Gray, Infant, by Everett M. Gray, father and next friend

v.

CITIZENS CASUALTY COMPANY OF NEW YORK.

No. 11259.

United States District Court
D. Maryland,
Civil Division.

Feb. 11, 1960.

Vaughn E. Richardson, Richard M. Pollitt, Webb & Travers, Salisbury, Md., for plaintiffs.

Frederick J. Green, Jr., Baltimore, Md., for defendant.

CHESNUT, District Judge.

This case involves the application of a particular section of the Maryland "Motor Vehicle Financial Responsibility" law, under circumstances not directly heretofore considered in the several Maryland cases upon the general subject. In the instant case the suit is brought on an automobile "operator's policy" only, issued to a named insured who was not the driver of the car involved in the accident out of which this suit arises. The jurisdiction of this court depends upon diversity of citizenship only. The Maryland law is therefore controlling. The case arises from the following background facts.

1. In August 1955, Lawson Ewell, whose driver's license had previously thereto been suspended, obtained a lifting of the suspension by having filed with the Automobile Commissioner a financial responsibility policy issued by the Citizens Casualty Company of New

York, said to have been in the nature of an owner's policy, listing a Chevrolet automobile and an "operator's policy" covering the period of one year from August 4, 1955 to August 4, 1956.[1] This policy was not renewed and on August 7, 1956 Ewell, as required by the Financial Responsibility Statute, Code 1957, art. 66½, §§ 116–149, had filed with the Commissioner another policy issued by the National Mutual Insurance Company of Washington, D. C., which was an "operator's policy" only. In September 1956, Ewell bought a Mercury car (the one involved in the accident in this case) which was registered in the joint names of himself and his wife. On November 6, 1956 the National Mutual Ins. Co. informed the Commissioner that its policy would be cancelled as of December 2, 1956 for failure of the insured to pay the premiums. Pursuant to that notice the driving license of Ewell was again suspended and by direction of the Commissioner the State Police visited Ewell and took up the tags of the Mercury car and Ewell's driving license. On February 7th the Commissioner noting that the Mercury car, the tags of which had been taken up, was registered in the joint names of Toritha and Lawson Ewell, returned the tags because he had no authority to retain them as there was no suspension of the driving license of Toritha Ewell. In that situation, to lift the suspension of his driving license, Ewell procured the "operator's policy" of the Citizens Casualty Co. (hereafter sued on) and that Company filed a certificate (SR–22) hereinafter described. On receipt of it the Commissioner returned to Ewell his driving license.

2. The certificate was filed by the Insurer in accordance with art. 66½, §

140 of the Maryland law as contained in the Code of 1957.[2] Section 140 provides:

"Operator's insurance policy.

"When the person required to give proof of financial responsibility is not the owner of a motor vehicle, such person may give proof of financial responsibility as required by this article by means of an operator's policy of insurance, insuring such person in the operation of any motor vehicle." Section 140 is the section applicable to the SR–22 certificate filed by the Citizens Insurance Company because in Ewell's written application to that Company for the issuance of a policy he had stated that he did not own an automobile; that no member of his household owned or had titled an automobile in his name; that he was a laborer employed by a farmer and that his occupation required him to drive automobiles for others than himself; that he had not been arrested or charged with driving while under the influence of liquor or with reckless driving more than once, and inferentially that he was not married. All the answers, except that he was a laborer, were untrue in fact because at the time (unknown to the Insurer) he did have an automobile which had been registered in the name of himself and his wife, and he had a substantially bad prior driving record.

3. The policy issued to him by the Company on the faith of the truth of the answers to the questions in the application (Defendant's Ex. No. 1) was an "operator's policy", applicable only to a case where the insured did not own an automobile. The policy (Plaintiff's Ex. No. 1) was on a printed standard form usually applicable to policies covering liability with respect to a specified au-

1. There is no evidence as to the terms or conditions of these policies, but as will later appear in the opinion, there is no contention by the plaintiffs that when the policy here sued on was written by the Insurer that it had any knowledge that Ewell, the insured, had an automobile.

2. The Insurer's certificate states that it was filed in accordance with the Maryland Motor Vehicle Financial Responsibility

Law, §§ 107 to 130 inclusive, but it will be historically noted that the sections so numbered were those contained in the Laws of 1943, ch. 1007, which substantially repealed and re-enacted with changes prior existing laws upon the subject. Section 140 as it now appears in the 1957 Code was section 121 of the 1943 Laws and in subsequent Codes has been re-numbered until now it is section 140 in the Code of 1957.

tomobile; but it differed therefrom importantly in that it specified no automobile but contained a prominently printed endorsement limiting its application to a case where the named insured owned no automobile, and expressly eliminating that now well-known printed condition of a standard policy called the "omnibus clause".[3] The endorsement is worded as follows:

"Operator's Policy Endorsement (Any Automobile)

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability, for Property Damage Liability and for Medical Payments applies with respect to the use of any automobile by or in behalf of the named insured, or the spouse thereof if a resident of the same household, subject to the following provisions:

"1. With respect to the insurance for Bodily Injury Liability and for Property Damage Liability the unqualified word 'insured' includes (a) such named insured and spouse, and (b) any other person or organization legally responsible for the use by such named insured or spouse of an automobile not owned or hired by such person or organization. Insuring Agreement III, Definition of Insured, does not apply to this insurance.

"2. *The insurance does not apply:*

"(a) *to any automobile owned by the named insured or a member of his household* other than a private chauffeur or domestic servant of the named insured or spouse; (Emphasis supplied.)

"(b) to any automobile while used in the business or occupation of the named insured or spouse, unless operated or occupied by such named insured, spouse, chauffeur or servant;

"(c) to any accident arising out of the operation of an automobile repair shop, public garage, sales agency, service station or public parking place;

"(d) under Medical Payments, unless the injury results from the operation of the automobile by such named insured or spouse or on behalf of either by such chauffeur or servant, or from the occupancy of the automobile by such named insured or spouse.

"3. The insurance for Medical Payments shall be excess insurance over any other valid and collectible Medical Payments insurance applicable to the automobile.

"4. Assignment of interest under this policy shall not bind the company until its consent is endorsed thereon.

"Nothing herein contained shall be held to vary, waive, alter or ex-

3. "Definition of Insured: (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either. The insurance with respect to any person or organization other than the named insured or such spouse does not apply:
"(1) to any person or organization, or to any agent or employee thereof, operat-

ing an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any accident arising out of the operation thereof, but this provision does not apply to a resident of the same household as the named insured, to a partnership in which such resident or the named insured is a partner, or to any partner, agent or employee of such resident or partnership.
"(2) to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer. * * *".

tend any of the exclusions, conditions or other terms of the under-mentioned policy other than as above stated.

"This endorsement shall take effect 2-11-57, 12:01 A.M., standard time at the named insured's address, and shall terminate simultaneously with this policy.

"Attached to and forming part of Policy No. CA 20049, issued to Lawson Brinkley Ewell

"Citizens Casualty Company of New York

"Countersigned at Baltimore, Maryland this 11th day of February 1957
by E. C. Jolliffe
 Authorized Representative

J. Hyman
 President

Walker White
 Secretary"

———◆———

The limits of liability contained in the policy were for bodily injury in the case of two persons, $20,000, and for property damage $5,000. There was no insurance for medical payments. It will be noted that on the first page of the policy containing the declarations of the insured as a basis for the policy, the statements are entirely consistent in every respect with the provisions of the particular endorsement just quoted.

4. On March 8, 1957 the Mercury car driven by the insured's wife, Toritha Ewell, in which Lawson B. Ewell was a passenger, was involved in a collision on a Maryland highway with a car in which the plaintiffs, Everett M. Gray and Geraldine Ann Gray, infant, were injured. The Ewell automobile was demolished by the accident. The Ewell car had been registered in the joint names of Ewell and his wife. When the Automobile Commissioner, after investigation, learned the circumstances of the accident, he suspended the driving license of Toritha Ewell, the wife, but not the driver's license of Lawson Ewell, and suspended the registration of the car as to both, but as the automobile had been "junked" and the registration certificate shortly to expire, at the end of March, the suspension of the registration became unimportant thereafter.

5. The Grays sustained physical injuries and property loss as a result of the collision. Subsequently, on February 18, 1958 the Grays filed suit against the Ewells in the Circuit Court for Wicomico County, Maryland, and the attorney for Ewell notified the Insurer thereof and requested it to defend the suit. The Insurer, after having investigated the facts of the accident and learning that its insured, Ewell, was not the driver or operator of the car, and that the facts furnished were also not within the coverage of the policy, denied liability and refused to defend the suit. Subsequently, as a result of the trial of the case, the Grays obtained judgment against the Ewells, both husband and wife, in the aggregate amount of $41,200. On February 25, 1959 the Grays filed this suit against the Insurer in the Circuit Court for Wicomico County and in due course the suit was removed to this court and was tried here on December 8-9, 1959.

The plaintiffs' amended complaint claimed damages in the total amount of $41,200 consisting of (a) the total amount of the limits of liability of the defendant's policy for bodily injury and property damage, to wit, $21,200, and (b) in addition thereto the further amount of the judgments in favor of the plaintiffs against the Ewells, to wit, $20,000 for alleged loss and damage due to what was described in the complaint as the defendant's lack of good faith in refusing to defend for the Ewells in the suit of the Grays against them. The defendant's answer in effect denied that its policy covered the loss in this case and also stated as a further defense that the plaintiffs did not have a proper stand-

ing to sue the defendant on the policy at the time the suit was instituted. In the latter respect it is to be noted that art. 48A, § 83 in particular provides as follows: " * * * that if an execution upon any final judgment against the assured is returned unsatisfied, in whole or in part, in an action brought by the injured or by another person claiming by, through, or under the injured, then an action may be maintained by the injured, or by such other person against the company under the terms of the policy for the amount of any judgment recovered in such action, not exceeding the amount of the policy, and every such policy shall be construed to so provide, anything in such policy to the contrary notwithstanding."

After the introduction of the evidence at the trial here (the material part of which has been related above) counsel for the defendant filed a motion for a directed verdict for the defendant and after colloquy between the court and counsel and by agreement of counsel, the plaintiffs' aggregate complaint was divided into two parts—(1) questions concerning the legal sufficiency under the evidence of the claim for $20,000 (the amount over and above the limits of liability of the policy) and (2) $21,200, the limits of the policy. It was agreed that the claim for $20,000 might possibly be dependent upon facts, if there was any liability on the policy at all, but that the question of the liability on the policy to the amount of its limits of coverage was, under all the evidence, purely a question of law. As the case had been up to that time heard by a jury, the court, after hearing counsel, instructed the jury to find for the defendant with respect to the extra or added claim of $20,000; and by agreement of counsel reserved the question as to the liability of the defendant at all on the policy, to be decided by the Judge without a jury as a question wholly of law.

In instructing the jury to find for the defendant with respect to the $20,000 item of the plaintiffs' claim, the court orally explained to the jury at the time the reasons for the instructed verdict. Shortly stated they were (1) that the right of the plaintiffs to sue the defendant was authorized and regulated by the Maryland statute, art. 48A, § 83 above quoted which limited the amount of recovery to the limits of liability of the policy sued on; and (2) that in any event there was no evidence in the case legally sufficient to show any lack of good faith on the part of the Insurer in denying coverage and refusing to defend at the request of Ewell, its insured, the suit of the Grays against the Ewells. Also, the duty of the defendant to defend the suit, if any, was only to Lawson Ewell, the named insured in the policy, and not to the Grays. At common law, a party not named as the beneficiary in a contract could not sue upon it. German Alliance Ins. Co. v. Home Water Supply Co., 1912, 226 U.S. 220, 33 S.Ct. 32, 57 L.Ed. 195 and Graybar Electric Co., Inc. v. John Doley, 4 Cir., 1959, 273 F.2d 284.

The question of law reserved for decision is whether there is any liability on the defendant by reason of this policy, either by the provisions of the policy itself or under the Maryland financial responsibility statutes. At the conclusion of the case the defendant submitted a request for an instructed judgment for the defendant on the controlling undisputed evidence in the case, and especially on the admitted fact that the named insured in the operator's policy was not driving the automobile when the collision occurred. The question will be considered first apart from the statute.

The first consideration to be noted is that the policy was an "operator's policy" only and not the more familiar type of automobile liability policy, an owner's policy, which specifies a particular automobile. In this respect the question is not complicated, as in many other cases, by the existence at the time of the accident of both a policy on a specified car and in addition, an operator's policy, or by two separate policies covering the same car, especially where a policy on

a specified automobile is extended by virtue of the so-called "omnibus clause" to cases where the automobile is driven not only by the named insured but by others with his permission, and where by another extending clause of the particular policy there may be liability even where the car that is engaged in the accident is another and different car from that specified.

 It is a well established principle of automobile liability insurance law that as between the named insured and the insurer, the former is not entitled to recover on the policy unless the loss is within the coverage of the policy; and in that respect, apart from statute, an injured party stands in no better position than the insured. Again, apart from the controlling statute, the policy must be construed in accordance with its clear and unambiguous provisions; Thomas v. Fidelity & Casualty Co., 1907, 106 Md. 299, 67 A. 259, and the insurer is under no liability to anyone suing on the policy if it has been obtained by the insured by means of false representations material to the risk; Baker v. Continental Casualty Co., 1953, 201 Md. 464, 94 A.2d 454; Monumental Life Ins. Co. v. Taylor, 1957, 212 Md. 202, 129 A.2d 103; State Farm Mut. Auto Ins. Co. v. West, D.C.Md.1957, 149 F.Supp. 289 and Metropolitan Life Ins. Co. v. Samis, 172 Md. 517, 192 A. 335.

Applying these well known legal principles to this particular policy, it is entirely clear that unless otherwise provided by statute, there was no legal liability upon the policy. Not only did Lawson Ewell, the insured, obtain the policy by express material misrepresentations, but the clear and unambiguous conditions of the policy provided:

"2. This insurance does not apply:

"(a) to any automobile owned by the named insured or a member of his household other than a private chauffeur or domestic servant of the named insured or spouse; * * *."

The undisputed fact is that the automobile involved in the accident at the time of the accident had been registered in the names of the insured and his wife and was not owned by a private chauffeur or domestic servant of the named insured or spouse. Again, apart from statute, the facts with respect to the nature of the policy, an operator's policy, and the ownership of the car, and the condition of the policy that it did not apply to an automobile owned by the insured, are so precisely similar to the facts in the recent decision of the Fourth Circuit Court of Appeals in Booth v. American Casualty Co., 1958, 261 F.2d 389 that it is quite unnecessary to extend this opinion by reference to other automobile insurance decisions as the applicable principles of law are the same under the Maryland decisions. In the Booth case, supra, where the policy did not conflict with a South Carolina statute, Code 1952, § 46–701 et seq., it was held that the insurer was not liable on an operator's policy containing the same limiting clause as in the present case, where the insured owned an automobile, even though he was the driver of the car causing the accident, contrary to the conditions in the policy. See also to the same effect Wilkins v. Inland Mut. Ins. Co., 4 Cir., 1958, 253 F.2d 489.

 Turning now to the Maryland statute regarding proof of financial responsibility, I find nothing therein that would warrant a recovery by the plaintiffs here in view of the undisputed fact that the car involved in the collision was not being driven (operated) by the insured. The evident public purpose of the statute in requiring proof of financial responsibility with respect to a named person whose driving license has been suspended, is to guarantee to the public recovery for damages which might be occasioned by himself as the individual driver. It is therefore clear that the required proof has no application to driving errors by another person whether closely related to the insured or not. In the instant case while the insured was a passenger in a car driven by his wife, there is no evidence that she was driving by his direction or that he had or un-

dertook to have any control over her driving. She herself had an existing Maryland driver's license.

■■ On the other hand, it is made equally clear in recent decisions of the Maryland Court of Appeals that when an automobile liability policy is certified by an insured to the Automobile Commissioner as proof of financial responsibility of a named insured, the statute is to be read in connection with the policy and to the extent of any conflict between the two, the statute must prevail. The effect, therefore, is that when an insurer certifies to the Automobile Commissioner the existence of a described policy, it has the responsibility of seeing that the provisions of the policy are not contrary to the statute. The policy and the statute must be read together. Keystone Mut. Casualty Co. of Pittsburgh, Pa. v. Hinds, 1942, 180 Md. 676, 26 A.2d 761; Celina Mutual Casualty Co. of Ohio v. Citizens Casualty Co., 1950, 194 Md. 236, 71 A.2d 20, 21 A.L.R.2d 605; Citizens Casualty Co. of New York v. Allied Mutual Ins. Co., 1958, 217 Md. 494, 144 A.2d 73. In applying the Maryland law in a case similar to but not the same as to the facts and the policy conditions as in the instant case (Inland Mut. Ins. Co. v. Stallings, 4 Cir., 1959, 263 F.2d 852,[4] the Fourth Circuit Court of Appeals has recently held that under an operator's policy if the named insured was driving the car at the time of the accident, the insurer is liable to an injured party if the insured is driving *any* car whether owned by him or not, and to that extent a contrary provision in the policy must be legally considered to have been deleted. The important and I think controlling difference on the facts between that case and the instant case is that in the former the named insured was driving the car and in the instant case he was not. The significance of this factual difference between the cases is well expressed in a sentence in the opinion of Chief Judge Sobeloff in the former case as follows:

"We are of the opinion that the Maryland Legislature intended to require as stated by the Commissioners, a 'policy covering the operator, regardless of the ownership of the car which he is operating * * * in the event of any accident occurring while the insured is at the wheel'." 263 F.2d 852, 857.

And the necessary applicability of that decision with respect to any automobile driven by the named insured is even further emphasized by the express provision of section 140 as above quoted, which is the particular provision of the Maryland statute applicable to this case. If therefore the named insured had been the driver of the car, the Insurer in this case would have been liable; but as he was not the driver of the car, I think it equally clear that the Insurer here is not liable on the policy in this case.

The Maryland Court has dealt with an operator's policy in several cases without, however, setting out in the opinion the special provisions of the policy, more particularly in the case of Celina Mutual Casualty Co. of Ohio v. Citi-

---

4. In the Stallings case the proof of financial responsibility was filed in accordance with § 139(a) & (b), art. 66½ of the Md.Code of 1957. For a driving error, Stallings' license was suspended but was renewed when he filed a policy covering his automobile, but with the restriction that it applied only to the particular car. To lift that restriction, he was required to furnish additional coverage in the form of an operator's policy endorsement by the same insurer. In a suit by an injured party against the insurer, one issue was whether or not the owner's policy covered the loss under the "newly acquired" automobile clause, as the car involved in the accident was a different car from that specified in the owner's policy. The final decision was the holding that under the operator's endorsement the insurer was liable for damage done by *any car* in which he was the driver, even if the "newly acquired" clause did not cover the loss. It will be noted also that the the wording of the condition in the operator's endorsement is not the same as that in the instant case. And the great difference between the two cases is that the insured was the driver in the Stallings case, but the insured in the instant case was not the driver.

zens Casualty, supra, where the coverage of the policy in that case was not disputed and the issue was only whether it applied pro rata or as excess insurance. In the instant case, however, the nature of and the economic reason for an operator's policy as contrasted with a policy on a specified car, and the historical development of the several types of automobile liability policies has been well and clearly explained by Mr. Robbins, an experienced underwriter. That type of policy was designed only for an insured who did not own an automobile but whose occupation was that of driving automobiles for others, as, for instance, truck drivers. This type of policy is not a novelty but has been in vogue generally with many large insurers for several years.

Counsel have not cited, nor have I been able to find, any decided case where suit has been successfully maintained by an injured person on an operator's policy alone, either without or as affected by a State financial responsibility statute, where the named insured was not driving the car at the time of the accident.

Apparently endeavoring to meet this situation, counsel for the plaintiffs base their argument on a contention that in the instant case the policy covered not only the named insured, who was not driving the car, but also the wife who was the driver. This contention was divided into two parts, one on the proper construction of the policy itself and the other on the plaintiffs' view of the effect of the Maryland statute. With respect to the contention as to the policy, no more need be said; while the policy does at first include the wife of the insured, that is expressly subject to the limitation that the policy as a whole does not apply to a case where the car is owned by the insured. In this respect the policy condition is precisely like that approved and enforced in the Booth case, supra. Although the condition of the policy as to ownership may properly be deleted under section 140 where the insured was the driver, it is not the case

here and it would be quite inadmissible to construe the policy to include the wife when, as a matter of contract, it did not apply at all. Certainly it could not be construed to cover the wife who, contrary to the terms of the policy, was driving a car which she in part owned with her husband. There is no question of waiver or estoppel as such in this case. Even though the Insurer would have been liable had the named insured been driving the car, the policy coverage cannot be expanded to cover the wife contrary to its express provision where the insured was not driving, and where by express policy provision the policy did not apply at all either to the insured or any one else.

Counsel for the plaintiffs advance another argument to hold the policy for the wife's driving. It is based on their application of the word "use" appearing in the first paragraph of the policy endorsement. The contention is that the insured was "using" the car when the wife was driving it, although she was a joint owner of the car and had a valid driving license and had the legal right under Maryland statutes to drive that particular car, while the husband did not. For this application of the word "use", counsel cite the Maryland case of Hardware Mut. Casualty Co. v. Mitnick, 1942, 180 Md. 604, 26 A.2d 393, but on examination it is at once noted that the suit there was on an owner's policy (specifying a particular car) containing the broad coverage of the "omnibus clause" covering the use of the car by others with the assent of the assured. But the policy endorsement in this case expressly eliminated the "omnibus clause" by providing: "Insuring Agreement III, (the omnibus clause) Definition of Insured, does not apply to this insurance". And even more importantly, the word "use" in the policy endorsement here is "subject to the following provisions" which include the condition that the policy endorsement does not apply "to any automobile owned by the named insured or a member of his household * * *," thus necessarily including his wife.

I come now to the plaintiffs' contention that the policy is contrary to the Maryland statute on financial responsibility. I find it a little difficult to follow because it completely ignores the provisions of section 140. The argument is that §§ 118 and 131 control the case. Before referring to them specifically it is important to bear in mind a general outline of the whole of the Maryland automobile law in art. 66½ of the Maryland Code of 1957 with respect to drivers and owners of automobiles. It is generally very well known to automobilists that before they can drive any car on the highways they must obtain a valid driver's license and if they own an automobile they must have it duly registered by the Automobile Commissioner. The driver's license itself may be unlimited or may be subject to particular restrictions. See art. 66½, §§ 88(9), 91 and 139, Md.Code of 1957. Automobiles must be registered in the name of the owner on forms furnished by the Commissioner and may be registered in the names of one or more joint owners according to the administrative practice. An adult having obtained a driver's license may register an automobile owned by him in his name and may drive it without having obtained an insurance liability policy until he has had an accident causing damage or personal injuries, when he may then be required to furnish

as proof of financial responsibility for the future, an insurance policy with limits of liability not less than "10, 20 and 5". To comply with financial responsibility requirements, the policy may be the ordinary kind of an owner's policy with approved standard provisions, or if the person required to furnish financial responsibility does not own a car he may submit as proof an operator's policy. The statute does not specify the particular terms or provisions of an operator's policy, but in the administrative practice the term is well understood and is commonly accepted by the Commissioner when the limits of liability are not less than those mentioned, as compliance with the requirements for proof of financial responsibility.[5] The statutes also expressly recognize an operator's policy as such sufficient proof. See art. 66½, §§ 139(b) and 140.

The operator's policy furnished as proof in this case was not in conflict with either § 118 or § 131 under the facts. Section 118 provides in substance that if a driver's license is *revoked* the Commissioner shall *suspend* the registration of all cars owned by him until he furnishes proof for the future as to his financial responsibility. This can be furnished by an operator's policy which was so furnished. It may be that the Commissioner should have notified Ewell or made a record notation that his in-

---

5. The administrative practice and understanding with regard to coverage and effect of filing an operator's policy as proof of financial reponsibility has been recently officially publicized by the Automobile Commissioner. His official statement in the matter was published in the Baltimore Daily Record of December 9, 1959. It reads as follows:

"The Comissioner of Motor Vehicles, John R. Jewell, wishes to direct the attention of all drivers who are required by law to file a certificate of financial responsibility insurance known as SR–22 with the Department, that there still seems to be a misunderstanding as to the type of filing required. The Commissioner wants to clarify these insurance requirements so that motorists may have the proper coverage not only in the event of an accident, but to avoid arrest as well.

If you do not own a vehicle registered in your name *only* and file an operator's certificate covering you as a driver, Commissioner Jewell wishes to make it clear that this certificate covers you *only* when operating vehicles other than your own. If you secure a car at a later date, it will be necessary to obtain an owner's policy and have an owner's certificate SR–22 filed at the Department before securing any license plates in your name as the law requires a certificate to be filed covering each and every vehicle owned by you.

You are warned that you definitely are not covered under an operator's certificate when driving a vehicle registered in your own name, and in doing so, you are operating illegally and subject to arrest." (Emphasis supplied.)

terest in the registration of the Mercury automobile registered in the names of himself and his wife, was suspended as to him, but if there was such an omission, that was a matter not known to the Insurer and was inconsequential with respect to the accident as Ewell was not the driver and the Commissioner had no authority to retain the tags of the automobile because the wife, who was the driver, had a joint interest in the car and the legal right to drive it at the time. The presence of Ewell in the car at the time as a passenger had no more relation to the accident than that of any other person who might have been a passenger in the car.

Section 131 is a long paragraph containing many provisions covering nearly three pages; but the only provisions therein which could seemingly have any application here are in substance that the policy offered as proof shall provide insurance with respect to all motor vehicles owned by the insured and as to others not owned but driven by him; and also shall cover liability for damages arising out of the "ownership, operation, maintenance or use of any motor vehicle" described or referred to in the policy. Both sections therefore contemplate principally a situation where the insured has an owner's policy on an automobile. They are in general terms as contrasted with the specific situation covered in section 140.

More importantly, however, the precise question here is not whether the Commissioner should have required a wider coverage policy than that which he accepted as sufficient proof but whether the policy he did accept was in conflict with the statute. The effect of his accepting it was merely to lift the suspension of Ewell's driving license. It had and could have had no effect on the rights of the wife to drive her car as her driving license was in good standing. The public purpose of the statute with respect to Ewell was to afford protection to the public against hazard of his driving and not that of his wife.

As we have seen that the coverage of the policy did not apply to any automobile owned by the insured, the only remaining question is whether the policy was in conflict with the statute. The policy endorsement was consistent with and not in conflict with the statute except that it would have covered if Ewell had been driving *any car* including the one involved. But as that contingency did not occur the coverage of the policy cannot be extended to govern this case where the contingency provided for in the statute did not occur.

If we assume that the Automobile Commissioner could or should have required Ewell to furnish an owner's policy in addition to the operator's policy, that omission, not known to the Insurer, constitutes no legal justification for holding the Insurer liable under a policy which it did not write and which it was not required to write by the statute under the facts known to it. Assuming that Ewell committed a fraud in obtaining the lifting of the suspension of his driving license, that fact cannot extend the coverage of the policy which it properly did write in accord with Ewell's application to it, and which was so expressly authorized by § 140. The Insurer has the legal right to accept as true the material representations in Ewell's application that he did not own a car, and was not obliged to make any independent investigation as to the truth of the representation. Booth v. American Casualty Co. supra. As the Insurer wrote the kind of policy authorized by § 140 on the basis of the fact stated in Ewell's application and the policy so written was accepted as satisfactory proof of financial responsibility by the Commissioner and as Ewell was not the driver of the car involved in the accident, there is no proper legal basis for holding the Insurer liable in this case, either upon the proper construction of the policy or under the Maryland statutes.

For these reasons I conclude that under the facts of this case the defendant Insurer is not liable on this policy to the plaintiffs and the motion of the de-

32

fendant for judgment for the defendant is hereby *granted*. The Clerk will therefore enter that judgment.

In view of the disposition of the case it becomes unnecessary to decide the further point raised by the defendant that the plaintiffs' suit was prematurely brought.